IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SAMUEL CABASSA,

                           Plaintiff,

                                            Civ. Action No.
     vs.                                  9:08-CV-480 (LEK/DEP)

JOSEPH T. SMITH, *et al.*,

                           Defendants.

_____


APPEARANCES:               OF COUNSEL:

FOR PLAINTIFF:

SAMUEL CABASSA, *pro se*
84-A-0364
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ANDREW M. CUOMO       ROGER W. KINSEY, ESQ.
Attorney General of               Assistant Attorney General
the State of New York
615 Erie Blvd., Suite 102
Syracuse, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

    Plaintiff Samuel Cabassa, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 against the Commissioner of the New York

State Department of Correctional Services (the "DOCS") and seventeen

other DOCS employees, alleging deprivation of his civil rights, additionally

asserting claims under the Americans With Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq*. and section 504 of the Rehabilitation Act of 1973,

29 U.S.C. § 794.  In his complaint, which is both comprehensive and wide

ranging, plaintiff asserts a variety of claims many of which, as a common

theme, allege various acts of retaliation against him for filing grievances

dating back to April of 2005, when he complained regarding the failure of

prison officials to investigate his claim that excessive force was used

against a fellow inmate.  As relief, plaintiff's complaint seeks awards of

compensatory and punitive damages against defendants in varying,

specified amounts.

In response to plaintiff's complaint defendants have moved for

dismissal on a variety of grounds, both procedural and substantive, and

additionally have claimed entitlement to qualified immunity from suit.[1]

---

[1]        Defendants also assert lack of standing as a ground for their motion, interpreting certain of plaintiff's claims as attempting to vindicate the constitutional rights of other inmates.  From a careful review of plaintiff's complaint I do not understand Cabassa to be raising civil rights claims on behalf of other inmates.  It is true that his first cause of action references excessive force exerted by prison officials against another inmate, and grievances were filed by the plaintiff addressing that

Having carefully considered defendants' motion, which plaintiff has not opposed, I recommend that the motion be granted in part, and that plaintiff's first, second and third causes of action, as well as all claims against defendants Malone, Bergmann and Miller, the sixth cause of action against Smith, Maley, and Pico and plaintiff's damage claims against defendants in their official capacities, except those alleged under the ADA, all be dismissed, and also that plaintiff's claims against defendants in their individual capacities under the ADA and section 504 be dismissed, but that the motion otherwise be denied.

I.    BACKGROUND[2]

Plaintiff is a New York State prison inmate entrusted to the care and custody of the DOCS; at all times relevant to his claims in this action, plaintiff was designated to the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York.  *See generally* Complaint

---

claim, and additionally his fourth cause of action makes mention of the fact that another inmate was wrongfully subjected to involuntary protective confinement.  I construe those allegations, however, as merely providing background to support the claims Cabassa is raising on his own behalf.  I therefore have found it unnecessary to address defendants' standing argument.

[2]    In light of the procedural posture of this case the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

(Dkt. No. 1).

Although somewhat difficult to distill, plaintiff's claims generally center upon his contention that various of the named defendants engaged in a campaign of retribution against him, in retaliation for his having filed various grievances over time.  According to plaintiff the acts of retaliation, which have included threats, intimidation, the filing of misbehavior reports and resulting findings of guilt, placement in involuntary protective custody ("IPC") without the requisite due process, and denial of his application for a transfer out of Shawangunk, were all precipitated by his filing of a grievance, no. SHG-21477-05, on April 5, 2005 alleging that the superintendent at Shawangunk and several other DOCS employees at the facility failed to properly investigate an incident alleged to have occurred on March 28, 2005, involving the use of excessive force by staff toward a fellow inmate.  Complaint (Dkt. No. 1) ¶ 6.  According to plaintiff, the ensuing course of recrimination against him continued and escalated, following his filing of a second grievance, no. SHG-21491-05, on April 9, 2005; a third, no. SHG-21631-05 on May 18, 2005; and a fourth, no. SHG-21662-05 on May 24, 2005, leading to his conviction in May of 2005, following a Tier II disciplinary hearing, of refusing to obey a direct order and a resulting penalty of thirty days of keeplock confinement together

4

with a corresponding loss of certain privileges, and his having been placed

in IPC, over his objection, from June of 2005 until October of 2007,

without having been afforded the full panoply of applicable due process

rights.[3]  *Id.*  Plaintiff also contends that the denial by prison officials of his

applications in July of 2005 and November of 2006 for a transfer into

another facility were also based upon retaliatory animus.  *Id.*

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on June 3, 2008.  Dkt. No. 1.

Named as defendants in plaintiff's complaint are Joseph T. Smith, the

Superintendent at Shawangunk; John Maly, the Deputy Superintendent of

Security Services at the facility; Daniel Connolly, a corrections captain at

Shawangunk; Glenn S. Goord, the former Commissioner of DOCS;

Donald Selsky, the DOCS Director of the Special Housing Unit/Inmate

Discipline Program; Jose Pico, a commissioner's hearing officer; Brian

Malone, the former Inspector General ("IG") of the DOCS;[4] Ray Roy, also

---

[3]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[4]      According to a communication received from defendants' counsel, Malone died on June 27, 2001.  *See* Dkt. No. 7.  In light of this information, I issued an

identified as the DOCS IG; Brian Bergmann, an investigator in the DOCS

IG office; David Miller, identified as the "HUB Superintendent"; Evan

Gorelick, the Deputy Superintendent for Program Services at

Shawangunk; A.J. Loscalzo, a corrections captain at the facility; Gerald

Gardner and L. Pingotti, two corrections lieutenants at the prison; and M.

Bertone, a corrections sergeant at Shawangunk.[5]  Plaintiff's complaint

sets forth eleven causes of action sounding principally in retaliation and

based upon actions allegedly taken toward plaintiff in return for his having

filed grievances, in violation of the First and Fourteenth Amendments to

the United States Constitution.

Following service of process upon the majority of the named

defendants, a motion was filed on their behalf on August 25, 2008 seeking

dismissal of plaintiff's claims on several grounds.  Dkt. No. 28.  Despite

granting plaintiff an extension of the deadline for doing so, *see* Dkt. No.

---

order on July 18, 2008 advising plaintiff that the court was treating counsel's letter as a suggestion of defendant Malone's death and that I would therefore recommend dismissal of the action as against that defendant pursuant to Rule 25(a) of the Federal Rules of Civil Procedure, absent a timely motion by plaintiff for substitution of an appropriate estate representative.  Dkt. No. 10.  No such motion has been forthcoming from the plaintiff.  Accordingly, among the recommendations now being made is that all claims against defendant Malone in this action be dismissed, for this reason and in light of the lack of his personal involvement.  *See* p. 20, *post.*

[5]     Certain of the defendants named in plaintiff's complaint are identified only as "Doe" defendants, including John Doe, an Analyst, CMC Transfer Review; James Doe, an Analyst, Classification and Movement; and Bob Doe, identified as an IPC review committee member at Shawangunk.  Dkt. 1 pp. 8-10.

29, he has failed to respond in opposition to defendants' motion.[6]

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements.  Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain

---

[6]    Plaintiff's failure to respond to the pending motion does not preclude me from recommending its disposition without the benefit of his submission. *See*, *e.g.*, *White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001). Such a motion to dismiss tests only the legal sufficiency of plaintiff's complaint; accordingly, since plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance, the court may now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law.  *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000).  It should be noted, however, that plaintiff's silence in the face of defendants' motion is not without significance; under this court's local rules, a party's failure to respond to a properly filed motion can constitute consent to the granting of that motion, provided the court determines that the moving party has met its burden demonstrating entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at 322-23 (holding that plaintiff's silence in the face of defendants' motion failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall*).

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 2197, 127 S. Ct. 2197, 2200 (2007)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964 (2007)(other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)(acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly*, 550 U.S. at 562, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true, and draw all inferences

in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84

S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d

292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint

under Rule 12(b)(6) is substantial; the question presented by such a

motion is not whether the plaintiff is likely ultimately to prevail, "'but

whether the claimant is entitled to offer evidence to support the claims.'"

*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d

435, 441 (S.D.N.Y. 2001)(quoting *Gant v. Wallingford Bd. of Educ.*, 69

F.3d 669, 673 (2d Cir. 1995))(other quotations omitted).

Accordingly, a complaint should be dismissed on a motion brought

pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide

some basis for the allegations that support the elements of his or her

claim.  *See Twombly*, 550 U.S. at 562, 570, 127 S. Ct. at 1969, 1974; *see*

*also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) ("In order to

withstand a motion to dismiss, a complaint must plead 'enough facts to

state a claim for relief that is plausible on its face'") (quoting *Twombly*, 550

U.S. at 570, 127 S. Ct. at 1974*)*.  "While *Twombly* does not require

9

heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (3d Cir. 2007)(quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

    B.    <u>Statute of Limitations</u>

Noting that the event referenced in plaintiff's complaint as having precipitated the campaign of retaliation forming the basis for the bulk of his claims dates back to more than three years prior to commencement of this action, defendants seek dismissal of plaintiff's claims as barred by the governing statute of limitations.

Section 1983 itself specifies no time limit for the commencement of civil rights actions brought under that section; in light of this void the Supreme Court has held that the limitations period applicable to such actions is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state.  *See Owens v. Okure,* 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989).  Plaintiff's section 1983 claims in this action are therefore governed by the three-year statute of limitations which applies in New York to personal injury claims of an otherwise unspecified nature.[7]  *See* N.Y. C.P.L.R. § 214(5); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997)(quoting *Owens*, 488 U.S.249-50, 109 S.Ct. 581-82); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113

---

[7]      Plaintiff's ADA and section 504 claims are also subject to a three-year statute of limitations.  *See Harrison v. Harlem Hosp.*, No. 05 Civ 8271, 2007 WL 2822231, at *3 (S.D.N.Y. Sept. 28, 2007).  In view of the timetable associated with the events giving rise to those causes of action, however, it does not appear that the statute of limitations comes into play with regard to those claims.

(N.D.N.Y. 2000) (Kahn, J.)(citing *Pinaud*, 152 F.3d at 1156 and *Owens*,

488 U.S. 250-51, 109 S.Ct. at 582).

     This action was formally commenced on May 5, 2008, with the filing

of plaintiff's complaint.  Dkt. No. 1.  For purposes of gauging the

timeliness of his claims, however, I have applied the prison mailbox rule

recognized in this circuit and elsewhere as controlling, for purposes of

measuring the timeliness of an action brought by a prison inmate.  *See*

*Houston v. Lack,* 487 U.S. 266, 270-76, 108 S. Ct. 2379, 2382-85 (1988);

*Jones v. Waterbury Police Dep't*, No. 04CV2137, 2005 WL 1185723, at *2

(D. Conn. May 12, 2005).  Since the post-mark found on the envelope in

which plaintiff's complaint was forwarded reflects that it was mailed on

May 2, 2008, absent a basis to find that the governing limitations period

was tolled during all or any part of the intervening period, it appears likely

that any claims accruing on or before May 2, 2005 are time-barred.[8,9]

     Like the governing limitations period, the tolling rules applicable to a

_____

     [8]     Despite the fact that state statutes of limitation, which often vary in length
from jurisdiction to jurisdiction, apply to such federal claims, the determination of the
proper accrual date to affix in connection with a section 1983 claim is controlled by
federal law.  *Ormiston*, 117 F.3d at 71; *see also Pearl v. City of Long Beach*, 296 F.3d
76, 80 (2d Cir. 2002).  Such a claim accrues when the plaintiff "'knows or has reason
to know of the injury which is the basis of his [or her] action.'"  *Singleton v. City of New
York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotations and citation omitted), *cert.
denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981).

     [9]     Oddly, plaintiff's complaint is dated March 25, 2008.  There is no readily
apparently explanation for the delay in mailing it to the court.

section 1983 claim are also borrowed by the corresponding state provisions. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86, 100 S. Ct. 1790 (1980); *Pearl v. City of Long Beach*, 296 F.3d at 80.  In New York, rules governing tolling are derived both from a number of codified provisions, governing such matters as disability due to infancy, insanity, or imprisonment, and based upon application of common law rules.  *Pearl*, 296 F.3d at 81.  In this case, there is nothing in plaintiff's complaint that would suggest that tolling under the state's governing provisions should be applied.  Plaintiff's claims are of such a nature that he undoubtedly knew, or at a minimum reasonably should have known, of the facts underlying his claims and the existence of a potential section 1983 cause of action at the time of the relevant events.  *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199-200 (2d Cir. 2001).

One potential basis for excusing the untimeliness of a complaint asserting a section 1983 violation is equitable tolling, a doctrine applied in "'rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented a party from timely performing a required act and that party 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Czernicki v. U.S. Dep't of Justice*, 137 Fed. Appx. 409, 410-11, 2005 WL 1498456, at *1 (2d Cir. 2005)(citing and

13

quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004)). The doctrine may be applied where a statute of limitations has passed due to "'defective pleading'" or the defendant's "'misconduct'" in preventing the plaintiff from bringing his claim or learning of the cause of action. *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89, 96, 111 S. Ct. 453, 112 L.Ed.2d 435 (1990)); *Kronisch* v. U.S., 150 F.3d 112, 123 (2d Cir. 1998). Once again, plaintiff's complaint discloses no basis to find equitable tolling, and in the face of defendants' motion, plaintiff has offered no explanation or basis upon which to find such tolling.

Under the circumstances now presented, particularly in light of plaintiff's failure to respond, I agree with defendants that any causes of action accruing prior to May 2, 2005 are untimely, and thus subject to dismissal. What is less than clear is the impact, if any, of this ruling upon plaintiff's claims. There are only a limited number of events recited in plaintiff's complaint which predate May 2, 2005, and none of them seem to trigger the accrual of one or more of plaintiff's claims. By way of example, the incident which formed the genesis of grievances alleged in plaintiff's complaint was the purported use of excessive force against another inmate on March 28, 2005. *See* Complaint (Dkt. No. 1) ¶ 6. That incident lead to plaintiff's filing of his first grievance, no. SHG-21477-05,

on April 5, 2005, representing activity protected by the First Amendment.
The few events which followed seem to have been relatively benign. *See
id.* ¶¶ 6(1)-6(4).

It does not appear that any of the actions allegedly taken by
defendants in retaliation for plaintiff's protected activity occurred prior to
May 2, 2005.  Since adverse action is an essential element of a claim of
retaliation, *see Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429
U.S. 274, 287, 97 S.Ct. 568, 576 (1977), plaintiff's retaliation claims could
not have accrued prior to the critical date of May 2, 2005, even if the
relevant protected conduct predated that milepost, and thus are not time-
barred.  Accordingly, I recommend denial of defendants' motion to dismiss
plaintiff's claims on the basis of the governing statute of limitations,
without prejudice to their right to argue at trial or on motion for summary
judgment that any adverse actions taken prior to May 2, 2005 and
potentially giving rise to a claim of retaliation are outside of the governing
limitations period, and to that limited extent plaintiff's retaliation are
untimely.

C.    Verbal Threats

Certain of plaintiff's claims are based upon alleged verbal threats,
intimidation, and disparaging comments on the part of corrections officers.

15

Plaintiff contends that such conduct constituted adverse action, and was taken against him in retaliation for his having engaged in protected activity.  In their motion, defendants also seek dismissal of this claim.

Claims of this nature typically arise in the context of the Eighth Amendment, with the plaintiff inmate alleging that verbal harassment and threats made by prison officials represent a form of cruel and unusual punishment in violation of that constitutional provision.  In response to such claims, courts typically note that 42 U.S.C. § 1983 is not designed to remedy harassment or verbal abuse.  *Alnutt v. Cleary*, 913 F.Supp. 160, 165-66 (W.D.N.Y. 1996) (citations omitted).  Accordingly, mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.  *See Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. and DiBianco, M.J. ) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

Plaintiff's claims regarding threats and harassment do not seek to

invoke the protections of the Eighth Amendment, however, but instead are grounded in the First and Fourteenth Amendments, with plaintiff contending that defendants' conduct represented adverse action taken in retaliation for his having engaged in protected activity.[10]

Even when measured against the applicable First Amendment retaliation standard, plaintiff's allegations regarding threats and verbal harassment as representing a form of adverse action are deficient.  For purposes of meeting the requirements for making a *prima facie* showing of retaliation, an action is sufficiently adverse only if it is one "that would deter a similarly situated individual of ordinary firmness of exercising constitutional rights."  *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *Islam v. Goord*, No. 05-Civ. 7502 (RJH), 2006 WL 2819651, at *5 (S.D.N.Y. Sept. 29, 2006).  Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard. *See Islam,* 2006 WL 2819651, at *5-6 (collecting cases); *see also Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (claim of receiving

---

[10]      As one example of this, Cabassa alleges that defendant Connolly threatened him in response to the filing of a grievance on May 18, 2005.  Complaint (Dkt. No. 1) ¶ 6(8).

threats, in retaliation for lodging complaints regarding cancellation of a dental appointment, deemed insufficient to support a cognizable claim). *Morales v. Mackalm*, 278 F.3d 1126 (2d Cir. 2002)(claim that defendant called plaintiff "stoolie" and "rat" in front of other inmates not sufficiently adverse); *Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2000)(references to prisoner as "informant" or a "rat" in conversations with other inmates were not sufficiently adverse), overruled on other grounds by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002);*Williams v. Muller*, No. 98 CIV 5204, 2001 WL 936297 (S.D.N.Y. Aug. 17, 2001)(spreading rumors about the plaintiff in order to incite other inmates did not state a cognizable claim).

I therefore recommend dismissal of plaintiff's first cause of action, which alleges a pattern of harassment, intimidation and threats in retaliation for his having engaged in protected activity, as well as that portion of plaintiff's second cause of action making similar assertions, as failing to support a *prima facie* case of retaliation.

D.   Personal Involvement

In their motion, defendants next challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in

18

alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)(citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Certain of the defendants named in this action are alleged by plaintiff to bear responsibility strictly as a result of their supervisory positions.  For the purposes of determining whether such a defendant can be held responsible for a constitutional deprivation it must be noted that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d at 501.  Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300

(2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . .  [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d at 152-53; *see also Richardson v. Goord*, 347 F.3d at 435; *Wright v. Smith*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

### 1.   Defendant Malone

Plaintiff's allegations against defendant Malone, despite the overall comprehensive nature of his complaint, are limited to broad and general allegations in his first and eleventh causes of action, in which he accuses

defendant Malone of complicity in other defendants' retaliatory actions. Such conclusory allegations, particularly in light of defendant Malone's apparent death in June of 2001 (long before the events relevant to plaintiff's claims are said to have occurred), convince me that plaintiff has failed to plausibly allege defendant Malone's personal involvement in the constitutional violations alleged. On that basis, I recommend dismissal of plaintiff's claims against defendant Malone.

2.    Defendant Goord

Plaintiff's allegations against defendant Goord are distinctly more specific than those against defendant Malone. Defendant Goord is named in plaintiff's first cause of action, alleging retaliatory harassment and threats based upon plaintiff's pursuit of complaints regarding alleged abuse of a co-inmate; his eighth cause of action, alleging Goord's refusal to overturn the determination to place Cabassa in IPC; and his claims predicated upon the denial of his prison transfer requests.

Plaintiff's complaint makes allegations from which one could infer both defendant Goord's awareness of constitutional deprivations raised and his failure to act to remedy those violations. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 3-4, 7. While defendant Goord cannot be held liable under section 1983 solely by virtue of his supervisory position, *see Wright v.*

21

*Smith,* 21 F.3d at 501*; Richardson v. Goord,* 547 F.3d at 435, the allegation that he either participated in, or was aware of but failed to remedy, an ongoing constitutional deprivation could suffice to establish a basis for finding liability. *Iqbal*, 490 F.3d at 152 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  While in their motion defendants allege that plaintiff has failed to adduce evidence to support defendant Goord's involvement, all that is required at this juncture is that plaintiff allege a plausible basis for finding liability as against the defendant; this he has done.  Accordingly, at this early procedural stage I recommend against dismissal of plaintiff's claims against defendant Goord for lack of personal involvement.

### 3.   Defendants Bergmann and Miller

Defendants Bergmann and Miller are named only in plaintiff's first cause of action, which alleges a pattern of threats, intimidation, and harassment in an effort to convince them not to pursue complaints against prison officials.  Since I have already determined that this cause of action is legally deficient, it is unnecessary to address the additional argument by defendants Bergmann and Miller that because their personal involvement in the constitutional deprivation at issue is not sufficiently alleged, and they are entitled to dismissal of that cause of action against them.

### 4.    Defendant Roy

Like defendant Malone, Roy is named only in plaintiff's eleventh cause of action, in which it is averred that he participated in a retaliatory decision to deny Cabassa's request for a prison transfer.   At this juncture it is not readily apparent why defendant Roy, who is identified as a DOCS IG, would have played a role in any decision involving an inter-prison transfer.   Nonetheless, as plaintiff has alleged that he, along with the other defendants named in that cause of action, were complicit in the denial of his transfer request in retaliation for his having engaged in protected activity, I am unable to say with certainty at this point in the proceeding that plaintiff cannot state a claim upon which relief may be granted against defendant Roy, and therefore recommend denial of defendants' motion for dismissal of that cause of action as against him.

### E.    Due Process Claims

Encompassed within plaintiff's complaint are claims alleging procedural due process deprivations in violation of the Fourteenth Amendment.   While the precise nature of those claims is somewhat unclear, it appears that plaintiff asserts procedural due process violations associated with a Tier II disciplinary hearing, stemming from alleged tampering by prison officials with the tape recording of the proceeding,

and additionally in connection with the refusal of defendants Smith and Gorelick to overturn the results of that conviction.  Plaintiff also complains that when placed in IPC he was not afforded procedural due process, including through meaningful, periodic reviews of his circumstances.  In their motion, defendants argue that these claims are without merit.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process.  *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  These principles apply equally to both disciplinary hearings leading to sanctions arising to a level of constitutional significance and decisions to place an inmate into IPC.  *Thomas v. Picio*, No. 04 Civ. 3174, 2008 WL 820740, at *3 (S.D.N.Y. March 26, 2008).

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest as a result of disciplinary action are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the

24

constitutionally mandated due process requirements, include 1) written
notice of the charges; 2) the opportunity to appear at a disciplinary hearing
and present witnesses and evidence, subject to legitimate safety and
penological concerns; 3) a written statement by the hearing officer
explaining his or her decision and the reasons for the action being taken;
and 4) in some circumstances, the right to assistance in preparing a
defense.  *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v.
Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  In order to pass muster
under the Fourteenth Amendment, a hearing officer's disciplinary
determination must garner the support of at least "some evidence".
*Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985).

As an initial matter I note that while defendants have not raised this
argument, the consequences flowing from plaintiff's Tier II hearing were
not sufficiently serious to qualify as a liberty interest deprivation of
constitutional proportions.  Plaintiff's complaint discloses that as a result of
the hearing officer's finding of guilt a disciplinary sanction was imposed
which included thirty days of keeplock confinement, with a corresponding
loss of privileges.  Complaint (Dkt. No. 1) ¶ 6(19).  Since plaintiff has not
alleged that the disciplinary confinement imposed following the Tier II
hearing departed from the ordinary incidents of keeplock confinement, his

disciplinary sanction of thirty days does not qualify as constitutionally significant deprivation for Fourteenth Amendment purposes.  *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995); *Scott v. Albury*, 156 F. 3d 283, 287-88 (2d Cir. 1998)(per curiam).

Even if plaintiff could establish the existence of a constitutionally significant liberty interest deprivation, his procedural due process claim would nonetheless be destined for dismissal based upon his failure to establish that he was denied the minimal due process required under *Wolff*.  As defendants correctly note, certain of plaintiff's allegations of irregularity regarding the disciplinary hearing appear to relate to the interference with the tape recorder, the alleged tampering with the hearing tape, and the hearing officer's failure to grant the request for an adjournment.  Because neither a tape recording nor adjournment of a disciplinary hearing is constitutionally mandated, plaintiff has failed to state a plausible due process violation claim with regard to his Tier II hearing as relates to those matters.  *Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002); *Afrika v. Selsky*, 750 F. Supp. 595, 600-602 (S.D.N.Y. 1990); *Brito v. Coughlin*, 88-cv-8064, 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989).  Accordingly, since plaintiff has alleged neither the deprivation of a cognizable liberty interest nor the denial of due

process growing out of his Tier II hearing, I recommend dismissal of the balance of plaintiff's second cause of action, as well as his third cause of action, both which relate to that matter.

Plaintiff's ninth cause of action also asserts a procedural due process claim, in this instance arising from his placement in IPC. As is the case with disciplinary SHU confinement, a prison inmate is entitled to at least minimal due process when being involuntarily placed in administrative confinement, particularly when that confinement entails the deprivation of a liberty interest including by virtue of the length of such confinement. *See Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998). The placement of an inmate into involuntary administrative confinement carries with it only minimal due process requirements. In *Hewitt v. Helms*, the Supreme Court defined the minimum due process to which an inmate is entitled when placed in administrative segregation, holding that under those circumstances an inmate is entitled to "an informal, nonadversary review," occurring "within a reasonable time" following the inmate's transfer to administrative segregation, where the inmate "receive[s] some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to

administrative segregation."[11]   459 U.S. 460, 472, 476, 103 S. Ct. 864,

872, 874.

Additionally, since "administrative segregation may not be used as a

pretext for indefinite confinement of an inmate[,]" prison officials must

periodically review their decision to ascertain whether a prisoner remains

a security risk.  *Id.* at 477 n.9, 103 S. Ct. at 874 n.9.  While these reviews

must be "meaningful and not simply perfunctory", *McClary*, 4 F.Supp.2d at

213 (citing *Giano v. Kelly*, 869 F.Supp. 143, 150-51 (W.D.N.Y. 1994)), the

Supreme Court made it clear in *Hewitt* that they will not necessarily

require that prison officials permit the submission of any additional

evidence or statements.

> [t]he decision whether a prisoner remains a
> security risk will be based on facts relating to a
> particular prisoner – which will have been
> ascertained when determining [whether] to confine
> the inmate to administrative segregation – and on
> the officials' general knowledge of prison
> conditions and tensions, which are singularly
> unsuited for "proof" in any highly structured
> manner.  Likewise, the decision to continue
> confinement of an inmate pending investigation of
> misconduct charges depends upon circumstances
> that prison officials will be well aware of – most
> typically, the progress of the investigation.

---

[11]   At least one court has held that these essential elements of minimal due process are easily satisfied by the detailed regulations that govern placement of inmates in administrative segregation in DOCS facilities.  *McClary v. Kelly*, 4 F. Supp.2d 195, 213 (W.D.N.Y. 1998).

*Hewitt*, 459 U.S. at 477 n.9, 103 S. Ct. at 874 n.9.

In his complaint plaintiff alleges that he remained in IPC status, on an involuntary basis, from June 3, 2005 until October 3, 2007, a period of some twenty-eight months.  Complaint (Dkt. No. 1) ¶ 6 (72).  Plaintiff asserts that his initial IPC hearing was conducted by defendant Pico, who was biased based upon a previous encounter between Pico and Cabassa, and that the hearing was infected based upon the failure to accommodate plaintiff's limited eyesight, the refusal of the hearing officer to permit the plaintiff to call witnesses on his behalf and to introduce documentary evidence supporting his defenses, and that the evidence adduced during the hearing failed to establish credibly that plaintiff's safety was in danger. *Id.*  ¶¶ 6 (32) - 6 (53).  Plaintiff further alleges that the resulting, infected IPC determination was improperly upheld on appeal to defendants Goord and Selsky on August 16, 2005, and that while he remained in IPC, against his will, only sham periodic reviews were conducted to determine whether the circumstances giving rise to his initial protective custody persisted.  *Id.* ¶¶ 6 (68) - 6 (69), 6 (72).  These allegations suffice, at this early stage, to allege a plausible due process violation stemming from his placement in involuntary protected custody.

     F.    <u>Americans With Disability Act and Section 504 Claims</u>

29

In his complaint, plaintiff purports to assert claims under the ADA and section 504 of the Rehabilitation Act.  Those claims appear to arise out of his left eye blindness and the alleged failure of prison officials to reasonably accommodate his vision impairment, including through providing a contact lens or other visual aid at a Tier II disciplinary hearing, and to allow him more time to review written materials.  Complaint (Dkt. No. 1) Sixth Cause of Action.  Defendants seek dismissal of this claim. Plaintiff's ADA and section 504 claims are asserted against defendants Smith, Maly and Pico, and appear to seek damages against them in both their official capacities and as individuals.

It is well established that neither the ADA nor section 504 of the Rehabilitation Act provide for suits for monetary damages against defendants in their individual capacities.  *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); and *Shariff v. Coombe*, No. 96 Civ. 3001, 2002 WL 1392164, at *2 (S.D.N.Y. June 26, 2002)(citing *Garcia*, 28 F. 3d 107).  Accordingly, I recommend dismissal of plaintiff's sixth cause of action, to the extent that it seeks recovery of damages against defendants Smith, Maley and Pico as individuals.

G.    Eleventh Amendment

30

Plaintiff's claims in this action are asserted against defendants, both individually and in their official capacities as state employees. Defendants contend that plaintiff's claims for damages against them in their official capacities are subject to dismissal on the basis of the immunity which the Eleventh Amendment affords.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[12] *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh,* 98 S. Ct. at 3057-58 and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)). "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity

---

[12]    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

belonging to the state."[13]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend this portion of defendants' motion be granted, in part, and that all damage claims, except for those asserted against the defendants in their official capacities under the ADA and section 504, be dismissed.  *Lighthall v. Vadlamudi*, No. 9:04-cv-0721, 2006 WL 7215678, at *18 (N.D.N.Y. March 17, 2006) (Mordue, J. and Treece, M.J.).

While not specifically addressing those counts, defendants' Eleventh Amendment argument appears to extend as well to plaintiff's claims asserted under the ADA.[14]  Unfortunately, however, such claims asserted against them in their official, representative capacities are not so easily

_____

[13]     By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

[14]     I also recommend dismissal of claims against defendant in the official capacities asserted under section 504.  Infra. pp.38-40.

discounted.  While in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), the Second Circuit held that an ADA plaintiff can assert a prospective claim for injunctive relief under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), against a state official in his or her official capacity, as opposed to against the state directly, it has not explicitly held likewise for ADA plaintiffs who seek money damages.  Nonetheless, as defendants argue, a request for monetary damages from DOCS officials in their official capacities, as plaintiff Cabassa has made in this instance, is the functional equivalent of seeking damages directly from the State of New York, and Eleventh Amendment sovereign immunity therefore ordinarily protects a defendant in his or her official capacity to the same extent that it protects the State.  *See*, *e.g.*, *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d at 107 (citing *inter alia*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)).

It is well settled under Eleventh Amendment jurisprudence that neither a state nor one of its agencies can be sued without either express or implied consent, or an express abrogation by Congress of the state's sovereign immunity.  *See*, *e.g.*, *Kilcullen v. N.Y. State Dep't of Labor*, 205 F.3d 77, 79 (2d Cir. 2000), implicitly overruled on other grounds by *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368, 121 S.Ct. 955, 965

33

(2001); *Hallett v. N.Y. State DOCS*, 109 F. Supp.2d 190, 197 (S.D.N.Y. 2000) (citations omitted).  In this respect, the Eleventh Amendment, while not directly controlling, confirms the broader, "'background principle of sovereign immunity[.]'"  *Garcia*, 280 F.3d at 107 (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72, 116 S. Ct. 1114, 1131 (1996)).  When abrogating sovereign immunity, Congress must both unequivocally intend to do so and act pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363, 121 S.Ct. at 962 (citing, *inter alia*, *Seminole Tribe*, 517 U.S. at 54, 116 S.Ct. at 1122; *Garcia*, 280 F.3d at 108) (citations omitted).  The pivotal question, in determining whether defendants are entitled to protection under the Eleventh Amendment when sued in their official capacities, is whether, and if so to what extent, that amendment protects the states from liability under Title II of the ADA and section 504 of the Rehabilitation Act.[15]

### i.   Eleventh Amendment: ADA Claims

The question of whether the Eleventh Amendment bars ADA claims under Title II against a state is an unsettled question among the circuits. In *Garrett*, the Supreme Court held that Congress had failed to validly

---

[15]     In making my analysis I have assumed, without deciding, that plaintiff's failure to include the state and/or the DOCS as a named defendant is not fatal to his claims.

abrogate state sovereign immunity under Title I of the ADA.  531 U.S. at

374, 121 S. Ct. at 967-68.  In doing so, the Court was careful to

distinguish Title II from its analysis, inasmuch as the issue had not been

briefed by the parties, but did note that the remedial scheme of Title II is

very different from that of Title I.  *Id.* at 360 n.1, 121 S. Ct. at 960 n.1.  The

courts appear to be divided as to whether *Garrett* should extend to Title II

of the ADA, especially since *Pennsylvania Dep't of Corr. v. Yeskey*, 524

U.S. 206, 118 S. Ct. 1952 (1998)  – which held that Title II of the ADA

applies to prisons – had been decided in the term previous to *Garrett*, but

did not address sovereign immunity.  *Compare*, *e.g.*, *Popovich v.*

*Cuyahoga Cty. Ct. of Common Pleas*, 276 F.3d 808, 813-16 (6th Cir.)

(holding that sovereign immunity validly abrogated by Congress as to the

Due Process Clause), *cert. denied*, 537 U.S. 812, 123 S. Ct. 72 (2002),

with *Alsbrook*, 184 F.3d at 1007 (finding that Congress exceeded authority

by extending Title II of the ADA to the states and therefore did not validly

abrogate sovereign immunity).

The Second Circuit has taken a slightly different approach than

various other federal courts in addressing this question.  In *Muller v.*

*Costello*, 187 F.3d 298, 310 (2d Cir. 1999) decided by the Second Circuit

before the Supreme Court issued its opinion in *Garrett*, the Second Circuit

35

found that Congress had validly abrogated sovereign immunity within its authority under section five of the Fourteenth Amendment, subjecting states to potential monetary liability under the ADA.[16]  More recently, however, in *Garcia v. S.U.N.Y. Health Sciences Ctr.,* the Second Circuit found that *Garrett* had "implicitly abrogated" its prior position that the states were not immune from ADA claims.  280 F.3d at 113 n.3.

In *Garcia*, the Second Circuit found that Congress could not validly abrogate sovereign immunity under the Commerce Clause, one of the two empowering provisions cited in support of its enactment of Title II.  *Garcia*, 280 F.3d at 108.  The circuit court went on to find, however, that Congress could exercise its authority under section five of the Fourteenth Amendment – the "sweep of congressional authority" allowing Congress to "enforce the [F]ourteenth [A]mendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities" – when enacting Title II of the ADA, as a whole, though it found the power to have been exceeded through enactment of Title II, since that provision conferred upon Congress the right to abrogate sovereign immunity and allow for private parties to sue nonconsenting states for money damages.  280 F.3d at 108-10.

---

[16]     That section provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."  U.S. Const. amend XIV, § 5.

Turning to the specific question of whether Congress, through proper invocation of its section five powers, effectively abrogated sovereign immunity in the case of private damage suits under Title II, however, the Second Circuit found that the ADA's broad remedial scheme, borrowed from the Rehabilitation Act and Title VI of the Civil Rights Act of 1964, included a judicially implied private cause of action, thus allowing that court latitude to shape a remedy.  *Id.* at 110-111.  Specifically, in *Garcia* the Second Circuit concluded that Title II claims against the states for monetary damages could be reconciled with the prohibitions of the Eleventh Amendment if permitted in limited circumstances – in cases where a plaintiff establishes that a Title II violation was motivated by discriminatory animus or ill will based on disability.[17]  280 F.3d at 111; *see*

---

[17]    The Second Circuit reaffirmed this position in *Henrietta D.*, noting that the two decisions were consistent.  331 F.3d at 268.  In *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004), the Supreme Court considered whether Congress validly abrogated the Eleventh Amendment when enacting Title II of the ADA, specifically examining Title II within the context of a state's responsibility to provide disabled persons with access to courts and holding "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."  *Id.* at 533-34, 124 S. Ct. at 1944.  Subsequently, in *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877 (2006), noting disagreement among the members of the Court "regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment", the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  546 U.S. at 159, 126 S.Ct. at 882 (emphasis in original).  The Second Circuit "has yet to address the fate of *Garcia* in the wake of *Lane* and *Georgia*, even though district courts in this Circuit have adopted divergent positions as to whether *Garcia* has been abrogated."  *Olson v. State of N.Y.*, 2:04-cv-00419, 2007 WL

*Doe v. Goord*, No. 04 CV 0570, 2004 WL 2829876, at *15 (S.D.N.Y. Dec. 10, 2004).

ii.    <u>Eleventh Amendment: Rehabilitation Act</u>

In addition to his ADA claim, plaintiff Cabassa also asserts a parallel claim under section 504 of the Rehabilitation Act against various DOCS employees "individually and in their official, representative capacities".   As is the case with plaintiff's ADA cause of action, plaintiff's section 504 claims against defendants in their individual capacities are also legally deficient.  *See*, *e.g.*, *Garcia*, 280 F.3d at 107; *Shariff,* 2002 WL 1392164, at *2.

As to the viability of plaintiff's section 504 claims against the defendants in their official capacities, once again *Garcia* is instructive on the issue.  Before *Garrett*, the Second Circuit had extended its logic in

---

1029021, at *7 (E.D.N.Y. March 30, 2007)(collecting cases); *Press v. State Univ. of N.Y. at Stony Brook*, 388 F. Supp.2d 127, 133 (E.D.N.Y. 2005)(noting division among district courts in Second Circuit on whether *Lane* addresses only cases implicating fundamental rights and *Garcia* applies to all others or whether *Lane* superseded *Garcia*); *see, e.g., Degrafinreid, v. Ricks*, 417 F. Supp.2d, 403, 409-10 (S.D.N.Y. 2006)(holding that *Lane* superseded *Garcia* and that *Georgia* "refined" the *Lane* test);*Goonewardena v. N.Y.*, 475 F. Supp.2d 310, 323-34 (S.D.N.Y. 2007)(applying test established in *Georgia* and holding where plaintiff stated a *claim* under Title II of the ADA but not a violation of the Fourteenth Amendment, court would determine whether abrogation of sovereign immunity valid exercise of Congressional power); *but see, e.g., Brown v. DeFrank*, 2006 WL 3313821, at * 26 (S.D.N.Y. Nov. 15, 2006)(applying *Garcia* standard of motivation by either discriminatory animus of ill will due to disability under *Georgia*).  Courts in this district appear to continue in their application of *Garcia*.  *See, e.g., Lighthall v. Vadlamudi*, 2006 WL 721568, at *18.

*Muller*, in which it held that Congress had validly abrogated sovereign immunity under the ADA, to claims under section 504 of the Rehabilitation Act.  *Kilcullen v. N.Y. State Dep't of Labor*, 205 F.3d at 78.  In *Garcia*, however, the Second Circuit held that as with Title II of the ADA Congress exceeded its power under section five of the Fourteenth Amendment.  280 F.3d at 113.  Since, unlike the ADA, section 504 was enacted under the Constitution's Spending Clause, however, the *Garcia* court held that despite Congress's failure to properly abrogate Eleventh Amendment immunity by statute Congress could still require a state to agree to waive its sovereign immunity as a condition of accepting federal funds.  *Garcia*, 280 F.3d at 113-114.  While acknowledging that Congress imposed such a condition in Title 42 (42 U.S.C. § 2000d-7), the court also noted that the state's waiver, as with any waiver, must have represented an "intentional relinquishment or abandonment of a *known* right or privilege".  *Garcia*, 280 F.3d at 114 (emphasis in original) (quotation omitted).

Applying this standard, the *Garcia* court was unable to conclude that New York had knowingly waived its sovereign immunity when it accepted federal funds, since at the time when the state accepted federal funds Title II of the ADA was reasonably understood to validly abrogate sovereign immunity under the Commerce Clause, thereby allowing suit

under the ADA and section 504 against the state.  *Id.* at 114 (citing, *inter alia*, *Kilcullen*, 205 F.3d at 82).

Courts in this circuit have differed, however, as to what date the State can be deemed to have understood that the DOCS acceptance of federal funds would create potential section 504 liability for them to which they were not already subject.  While some courts have held that the state effectively waived its sovereign immunity as of September 25, 2001, when *Garcia* was decided, others have held that the waiver occurred as early as February 25, 2001, when the Supreme Court decided *Garrett*.[18]  *See Doe v. Goord*, 2004 WL 2829876, at *16 (noting split and collecting cases).

Since all of the acts complained of by Cabassa occurred after 2001, it appears that his claims of official liability under the Rehabilitation Act survive notwithstanding defendants' Eleventh Amendment argument.  I therefore recommend against dismissal of plaintiff's section 504 claim against the defendants in their official capacities.

H.    Conspiracy

According to defendants, embedded within plaintiff's claims is his

---

[18]    One court has even suggested in *dicta* that arguably sovereign immunity could have been waived as early as April 17, 2000, when the Supreme Court granted *certiorari* in *Garrett*.  *Wasser v. New York State Office of Voc. & Educ. Servs. for Indivs. with Disabilities*, No. 01-CV-6788, 2003 WL 22284576, at *10 (E.D.N.Y. Sept. 30, 2003).

accusation that defendants were engaged in a conspiracy to deprive him of his civil rights.  Arguing that plaintiff's conspiracy claims are insufficiently pleaded, and in any event barred by the intra-corporate conspiracy doctrine, defendants also seek dismissal of any such cause of action.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

Claims of conspiracy in cases like this are also typically met with the argument that because they implicate, as participants, the DOCS and its employees, such claims are barred by the intra-corporate conspiracy doctrine.  Rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in the context of business entities, since inception has been expanded to

apply to business corporations and public entities as well, the intra-corporate conspiracy doctrine provides, that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances.  *See, e.g., Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002); *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 504CV1453, 2005 WL 1460424, at *10 (N.D.N.Y. June 20, 2005)(Scullin, C.J.).  Since all of the defendants named in this action are employees of the DOCS, any conspiracy claim asserted by plaintiff would be subject to dismissal on the basis of this well established rule.

Unlike the defendants, however, I am unable to discern any conspiracy claim expressly contained within plaintiff's complaint.  Although plaintiff's first cause of action refers to "collusion" it does not appear to assert the existence of a conspiracy on a formal basis, independent of the retaliation claim set forth within it.[19]  While any conspiracy claim would be subject to dismissal as having been insufficiently alleged and additionally as subject to the intra-corporate conspiracy doctrine, because I do not detect such a claim from the face of plaintiff's complaint I recommend

_____

[19]    In any event, I am recommending dismissal of plaintiff's first cause of action.  *See* pp. 15 -18, *ante*.

42

denial of this portion of defendants' motion as academic.

    I.     Qualified Immunity

    In addition to asserting that plaintiff's claims, as currently

constituted, are insufficiently pleaded, defendants also assert their

entitlement to qualified immunity from suit.

    Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted).

Accordingly, governmental officials sued for damages "are entitled to

qualified immunity if 1) their actions did not violate clearly established law,

or 2) it was objectively reasonable for them to believe that their actions did

not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999)

(citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v.*

*Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal,* 490 F.3d at 152.

The law of qualified immunity seeks to strike a balance between

overexposure by government officials to suits for violations based upon

abstract rights and an unduly narrow view which would insulate them from

liability in connection with virtually all discretionary decisions. *Locurto v.*

*Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332.  As

the Second Circuit has observed,

> [q]ualified immunity serves important interests in our
> political system, chief among them to ensure that
> damages suits do not unduly inhibit officials in the
> discharge of their duties by saddling individual officers
> with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted)(citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Until recently, it was generally agreed that a proper qualified

immunity analysis entailed a three-step inquiry.  *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a

threshold matter, a court considering the issue was charged with first

determining whether, based upon the facts alleged, the plaintiff had

facially established a constitutional violation.  *Id.*; *Gilles v. Repicky*, 511

F.3d 239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the

affirmative, then the focus turned to whether the right in issue was clearly

established at the time of the alleged violation.  *Harhay,* 323 F.3d at 211

(citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001));

*see also Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002).  Finally, upon

44

determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998)(quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 818, 2009 WL 128768, at *9 (Jan. 21, 2009).  In *Pearson*, the court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes with a price.  *Id.* at *10.  The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case.  *Id.*  Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the court opined that the algorithm prescribed by *Saucier* may

45

serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily." *Id*. (quotations and citations omitted).

As a result of its reflection on the matter, the *Pearson* court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the . . . prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at *9.

As can be seen, the qualified immunity analysis is informed in the first instance by whether a cognizable constitutional violation has been alleged. Since I have already recommended dismissal of various of plaintiff's claims, it is unnecessary to proceed further with the qualified immunity analysis with regard to those causes of action. As to the remaining claims, the majority of those are comprised of retaliation causes of action asserted pursuant to the First Amendment, as well as procedural due process claims arising under the Fourteenth. Since those rights were

clearly established at the time of the relevant events, and the court is unable to conclude at this juncture that it would be objectively reasonable to believe that the issuance of false misbehavior reports and the imposition of disciplinary sanctions in retaliation for engaging in protected activity did not run afoul of established principles, and further that the denial of procedural due process, including meaningful periodic reviews for an inmate entrusted to IPC would similarly not contravene the due process requirements of the Fourteenth Amendment, I recommend denial of defendants' motion for dismissal on the basis of qualified immunity with regard to plaintiff's remaining claims.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action asserts several claims, most of which fall into the categories of either unlawful retaliation, prompted by his having engaged in protected activity, or the denial of procedural due process.  While certain of plaintiff's claims are subject to dismissal as a matter of law, including those associated with claims of threats, harassment or intimidation, others related to the issuance of false misbehavior reports and disciplinary sanctions, and the placement of the plaintiff in IPC, allegedly without affording meaningful, periodic reviews, cannot be dismissed at this early procedural juncture.  Accordingly, it is

hereby respectfully

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 28) be GRANTED, in part, and that plaintiff's first, second and third causes of action be DISMISSED in their entirety; that all claims against defendants Malone, Bergmann and Miller be DISMISSED; that all damage claims, except those arising under the ADA, against defendants in their official capacities be DISMISSED; all damage claims against defendants in their individual capacities asserted under the ADA and section 504 be DISMISSED; that plaintiff's sixth cause of action against Smith, Maley and Pico in their individual capacities be DISMISSED; but that defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      April 10, 2009
            Syracuse, NY